UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHELLIE L. CATON, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>COMMISSIONER OF SOCIAL )<br>SECURITY )<br>)<br>Defendant. ) | NO. 1:11-CV-00245-MJD-TWP |

## Entry on Judicial Review

Plaintiff Shellie Caton requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Income ("SSI") disability benefits under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§416(i); 1382c(a)(3). The Court rules as follows.[1]

## I. Procedural History

Caton filed an application for Supplemental Security Income ("SSI") effective August 17, 2007, alleging a disability onset date of December 23, 1998. Caton also filed an application for Disability Insurance Benefits ("DIB"), but that application was dismissed because her insured status for purposes of DIB expired on March 31, 1999.[2] The claim for SSI was denied initially on September 27, 2007 and upon reconsideration on January 2, 2008. Caton requested a hearing

---

[1] The parties consented to the Magistrate Judge conducting all proceedings and ordering the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Any objections to or appeal of this decision must be made directly to the Court of Appeals in the same manner as an appeal from any other judgment of a district court. 28 U.S.C. § 636(c)(3).

[2] An applicant must have disability insured status in the 12th month (17th if a waiting period applies) prior to the month in which she files her application for disability insurance benefits. 20 C.F.R. § 404.131. Caton's August 2007 application for DIB was not timely filed.

1

which was held before Administrative Law Judge ("ALJ") Angela Miranda on February 23, 2010. On July 21, 2010, the ALJ issued a partially favorable decision in which she found that Caton was disabled, and thus eligible for SSI, as of November 1, 2008. The ALJ also denied Caton's request to reopen previous applications for SSI and DBI. On January 6, 2011, the Appeals Council denied Caton's request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. Caton filed her Complaint with this Court on February 17, 2011.

## II. Factual Background and Medical History

Caton was forty-nine years old at the time of the ALJ's decision. She had a high school equivalency diploma, and prior to the onset of her alleged disability she worked as a seafood clerk in a grocery store. Caton last worked in 1999 at a production facility that made suntan lotion. Caton began experiencing back pain in 1995 and had surgery on her sciatic nerve in 1999. After the surgery, she continued to have back and leg pain. From 1999 to 2009, Caton was treated with nerve block injections and pain medications. She used a cane to assist her with walking, and in 2008 she began using a walker. In October 2009, Caton underwent additional back surgery and has been restricted to using a wheel chair ever since. She is now unable to stand without holding onto something, and cannot stand for more than two minutes. She is unable to walk, lift, bend or kneel, and sitting hurts her after only a few minutes. Caton only experiences relief when she lies down.

Prior to November 2008, Caton was diagnosed with failed back surgery syndrome, minimal degenerative disc disease of the lumbar spine, trigger finger, depression and obesity. In July 2009, Caton underwent an MRI of her lumbar spine, which revealed that she also had bilateral sacral insufficiency fracture with nonunion, and status post sacroplasty with bone graft

and idiopathic scoliosis, which the ALJ determined dated back to November 2008 based upon an increase in Caton's complaints about pain to her physician.

### III. Applicable Standard

Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(a)(3)(A); 20 C.F.R. § 416.905. In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 1382(a)(3)(B).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into [her] reasoning ... [and] build an accurate and logical bridge from the evidence to [her] conclusion." *Id.*

## IV. The ALJ's Decision

The ALJ first found that only a Title XVI SSI application was pending, and she denied Caton's request to reopen prior SSI and DIB applications. Applying the five-step analysis, the ALJ found at step one that Caton had not engaged in substantial gainful activity since the alleged onset date of her disability. At step two, the ALJ found that since her alleged onset date, Caton had the following severe impairments: failed back surgery syndrome, minimal degenerative disc disease of the lumbar spine, trigger finger, depression and obesity. As of November 1, 2008, the ALJ found that Caton had the following additional severe impairments: bilateral sacral

4

insufficiency fracture with non-union, status post sacroplasty with bone graft and idiopathic scoliosis.

At step three, the ALJ determined that Caton did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Caton's degenerative disc disease and degenerative joint disease did not satisfy the criteria for §§ 1.02 and 1.04 for the Musculoskeletal System, and that her depression did not satisfy the criteria under § 12.04 for Affective Disorders.

The ALJ determined that, prior to November 1, 2008, Caton had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 416.967(a). The ALJ found that Caton had the RFC to occasionally lift and carry up to ten pounds and to frequently lift and carry light articles weighing less than ten pounds. She also determined that Caton had the capacity to stand and/or walk up to two hours in an eight hour work day, and the capacity to sit up to six hours in an eight hour work day. Considering Caton's symptoms of depression, the ALJ found that she had the capacity to understand, remember, and carry out simple, routine tasks, appropriately interact with supervisors and coworkers, and had the capacity for occasional interaction with the general public. In making her credibility determination, the ALJ found that Caton's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the ALJ found that Caton's statements regarding the intensity, persistence and limiting effects of these symptoms were not credible prior to November 1, 2008 to the extent that they were inconsistent with the RFC assessment, but that they were credible after November 1, 2008. Additionally, the ALJ found that beginning on November 1, 2008, Caton had the RFC to perform sedentary work, but that she does not have the capacity to sustain this level of functioning on a regular and continuing basis without additional non-scheduled breaks or

absences from work. Although there was no significant objective medical evidence prior to Caton's July 2009 MRI, the ALJ considered the increase in Caton's subjective complaints beginning in November 2008 in assessing her onset date and corresponding RFC.

At step four, the ALJ determined that Caton does not have the capacity to perform her past relevant work. At step five, the ALJ determined that, considering her age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Caton could have performed prior to November 1, 2008. However, beginning November 1, 2008, the ALJ found that there were no jobs that Caton could perform. Thus, the ALJ determined that Caton was not disabled prior to November 1, 2008 under section 1614(a)(3)(A) for purposes of SSI, but that Caton became disabled on that date and has continued to be disabled through the date of the ALJ's decision.

## V. Discussion

Caton presents three arguments as to why the ALJ's decision was in error and the case should be remanded. Specifically, Caton claims that: (1) the ALJ erroneously determined Caton's onset date of her total disability contrary the evidence and to Social Security Ruling ("SSR") 83-20; (2) the ALJ failed to summon a medical advisor; and (3) the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling 96-7.

1. **The ALJ's Onset Date Determination is Supported by Substantial Evidence**

Caton argues that the denial of Social Security Insurance Disability Benefits must be reversed because the ALJ erroneously determined that Caton's onset date was after her last insured date for DIB, and that substantial evidence did not support a finding that her onset date was November 1, 2008. However, there was no DIB application pending before the ALJ, thus there is no denial of DIB to reverse. Caton did not timely file her DIB application; therefore it

was dismissed. Caton requested that the ALJ reopen all prior SSI and DIB applications, but she found no basis to reopen any prior determinations. [Dkt. 14-2 at 15 n. 1]. This Court does not have jurisdiction to review an ALJ's decision not to reopen prior applications for DIB or SSI. *See Diaz v. Chater*, 55 F.3d 300, 304 n. 1 (7th Cir. 1995). Therefore, the ALJ's decision not to award disability insurance benefits is not a reversible error.

Caton further argues, aside from the issue of reopening her DIB application, that the ALJ erred by failing to apply the requirements of Social Security Ruling 83-20 in determining her disability onset date for purposed of SSI. Under Title XVI there is no retroactivity of payment, and SSI payments are prorated for the first month for which eligibility is established after the date of the claimant's application. 20 C.F.R. § 416.335. Ordinarily, there is no need for the ALJ to make an onset date determination. Social Security Ruling 83-20 is applicable only where the onset date must be separately determined because the onset is *subsequent* to the date of filing. SSR 83-20. SSR 83-20 does not apply to determine an onset date prior to the application date. Therefore, SSR 83-20 would not apply to make an onset determination that is prior to the application date, nor is such a determination even necessary or proper for an SSI application.

Alternatively, Caton argues that substantial evidence does not support the disability onset date of November 1, 2008, and that the evidence and SSR 83-20 dictate a finding that the onset date was December 23, 1998, making Caton eligible for SSI disability benefits dating back to the date of her application. Although it was not necessary for the ALJ to make an onset date determination prior to the date of Caton's application, SSR 83-20 still supports a finding that the onset date was November 1, 2008, subsequent to Caton's application date.

Under SSR 83-20, the factors that are relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. SSR 83-20.

"However, the individual's allegation or the date of work stoppage is significant in determining onset *only* if it is consistent with the severity of the condition(s) shown by the medical evidence." *Id.* Additionally, expiration of insured status is not a consideration in determining when disability began. *Id.* The medical evidence serves as the primary element in determining onset. *Id.* In cases, such as this one, where the alleged onset date and date last worked is far in the past, it may be necessary for the ALJ to infer the onset date from medical or other evidence. *Id.*

Caton's insistence that her onset date is December 23, 1998 can only be connected to the fact that this is prior to the date that her insured status for DIB terminated. This date is wholly irrelevant since there is no DIB application pending. Despite the fact that the ALJ was only required to consider evidence from the twelve months prior to the date of application under 20 C.F.R.416.912(d)(2), she did consider evidence dating all the way back to 1995. The ALJ cites several pieces of evidence that she determined to be inconsistent with Caton's claim that she became disabled in 1998, including her subjective reports to doctors that she felt better after various treatments and her performance on motor strength, stability and alignment assessments. [R. 19 - 20]. The ALJ points to specific medical evidence in support of her onset date determination, including the 2009 MRI and Caton's physical exam by Dr. Silbert in November 2008 at which Caton reported increased pain. [R. 20]. The ALJ complied with the requirements of SSR 83-20 by inferring an onset date that was prior to the July 2009 MRI based upon Caton's subjective complaints, despite the lack of significant objective medical evidence prior to this date. [R. 21 - 22]. The Court finds that the ALJ articulated a sufficient basis for her onset date determination, and the Court is not in a position to reweigh the evidence. *See Overman*, 546 F.3d at 462.

    2. **The ALJ Was Not Required to Summon an Additional Medical Expert at Step Three**

Caton argues that the ALJ was required to summon a psychologist[3] as a medical expert to testify as to whether her impairments medically equaled a listed impairment, and argues that because no medical expert testified at her hearing that the ALJ's step three findings were based upon her layman's opinion. Further, Caton argues that the ALJ did not support her finding that her impairments were not medically equivalent to a listed impairment with any evidence or analysis.

The decision to use a medical expert is discretionary; an ALJ may ask for and consider opinions from medical experts on the nature and severity of impairments, but there is no requirement in the regulations that she does so. *See* 20 C.F.R. 416.927(f)(2)(iii). "If the ALJ believes that [s]he lacks sufficient evidence to make a decision, [s]he must adequately develop the record and, *if necessary*, obtain expert opinions." *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (emphasis added).

The ALJ's decision cites several sources in the record that provide adequate basis for her conclusion that Caton's mental impairments did not meet or medically equal Listing 12.04 or 12.06. The ALJ discussed evaluations by Caton's physician, Dr. Silbert, who consistently reported Caton's mental state as normal. [R. 17]. The ALJ also discussed an evaluation by psychologist Dr. April Faidley, who reported that Caton showed normal memory and math skills, good eye contact, and logical and organized thoughts, and that she was capable of understanding and remembering moderately complex information . [R. 20 - 21]. The ALJ also noted that Caton had no evidence of decompensation, potential episodes of decompensation, or the inability

---

[3] In her reply brief, Caton argues that the ALJ erred in failing to summon an orthopedist, not a psychologist, and argues that the Commissioner's failure to respond to this contention "implicitly concedes its correctness." [Dkt 28 at 5]. It is well settled that arguments made for the first time on reply are considered waived. *Mitchell v. Astrue*, 1:10-cv-01191-JMS-MJD, 2011 WL 3205306 at *2 n. 8 (S.D. Ind. July 27, 2011) (citing *Hendricks v. New Albany Police Dep't*, 749 F.Supp. 2d 863, 872 (S.D. Ind. 2010)). The Commissioner cannot waive an argument that was not presented to him. Caton's argument that the ALJ should have summoned an orthopedist is therefore waived.

to function outside a highly supported living arrangement or outside the area of Caton's home. [R. 17].

Furthermore, Dr. Mangala Hasanadka and Dr. Rose Fife completed Disability Determination and Transmittal forms, which conclusively establish that a physician designated by the Commissioner has considered the question of medical equivalence. [R. 56-57]. *See* SSR 96-6p ("The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) … ensures that consideration by a physician … designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review."); *Scheck*, 357 F.3d at 700 (the ALJ may properly rely upon the opinion of medical experts completing DDT forms on the question of medical equivalence). Caton does not cite to any facts in support of her argument, and instead makes blanket assertions regarding the ALJ's failure to summon a medical advisor. This does not constitute a sufficient argument and Caton has not met her burden. Thus, the Court finds that the ALJ did have substantial evidence to support her conclusion that Caton's mental impairments did not meet or medically equal a listed impairment and that she was not required to summon a psychologist.

### 3. The ALJ Made a Proper Credibility Determination

Caton argues that the ALJ's credibility determination is patently erroneous because it is contrary to SSR 96-7p, and that she rejected or ignored all evidence of her lower back pain and leg numbness and pain. SSR 96-7p requires that the ALJ consider an individual's statements about the intensity and persistence of symptoms or about the effect the symptoms have on her

10

ability to work within the context of the entire record and may not disregard them solely because they are not substantiated by objective medical evidence.  SSR 96-7p.

The ALJ adequately considered all of the evidence in the record in making her credibility determination. [R. 18-21].   As part of her RFC determination, the ALJ found that Caton's statements concerning intensity, persistence, and limiting effects of her symptoms prior to November 1, 2008 were not credible to the extent they were inconsistent with the ALJ's RFC finding.[4]  The ALJ noted the inconsistencies with Caton's testimony with other evidence in the record, such as the limited duration of her work release; a lack of deficit in her motor strength, along with normal stability and alignment; Caton's ability to do housework, laundry, cooking, and caring for her infant grandchild; and her ability to exercise. [R. 19].  Caton fails to articulate how the ALJ failed to comply with the requirements of SSR 96-7p aside from citing to five pages of medical records from the St. Francis Hospital emergency room. [R. 512-14, 516].  The ALJ is not required to discuss every piece of evidence in the record and is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability.  *Carlson*, 999 F.2d at 181; *Scheck*, 357 F.3d at 700.  The Court finds that the ALJ properly considered the evidence in the record in making her credibility determination in accordance with SSR 96-7p, and that substantial evidence supports her findings.  Thus the ALJ's credibility determination is not reversible error.

## VI. Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED**.

---

[4] The language regarding the ALJ's credibility determination quoted in Caton's brief is inaccurate and is not from this ALJ's opinion, nor is it accurately cited to the record.  Caton's counsel has repeatedly included the same "boilerplate" language in various briefs before this Court, apparently with no regard as to whether it is an accurate quote from the ALJ's opinion at issue.  This Court has previously addressed counsel's use of "'form' legal arguments that he makes in nearly every disability denial review case" without connecting them to the ALJ's decision in the case before the Court.  *Smith v. Astrue*, 1:09-cv-01165-DML-JMS, 2011 WL 2064843 at *2 (S.D. Ind. May 25, 2011). Counsel is admonished to be more diligent in citing to the record so as not to mislead the Court.

Dated:  02/27/2012

Distribution:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Patrick Harold Mulvany
patrick@mulvanylaw.com

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana